**MOTION PICTURES MACHINE OPERATORS LOCAL NO. 330, Appellant,**

v.

**J. E. PIPPIN, Appellee.**

No. 16418.

Court of Civil Appeals of Texas.

Fort Worth.

April 12, 1963.

Rehearing Denied May 17, 1963.

Mullinax, Wells, Morris & Mauzy, L. N. D. Wells, Jr., and George Schatzki, Dallas, for appellant.

Ernest May, Fort Worth, for appellee.

MASSEY, Chief Justice.

The appeal is from an order granting a permanent injunction to restrain union picketing of a theatre where the owner had

discharged his union motion picture projection machine operators and begun performing all theatre operations in person and through members of his family.

A decision of this state which we consider of paramount importance in the determination of propriety of the injunction order is that of International Union of Operating Engineers Local No. 564 v. Cox, 1949, 148 Tex. 42, 219 S.W.2d 787. The law of labor relations applicable in Texas may be used to have declared illegal even peaceful picketing by a union, or members thereof, of the premises of an individual being occupied and used in the prosecution of his business activities, where there exists no labor dispute.

The term "labor dispute" is defined at two places in the Texas Statutes. Under V.A.P.C., Title 18, "Labor", Ch. 10, "Interference with Labor or Vocation", Art. 1621b, "Preventing others from engaging in lawful vocation; attempts; labor dispute, unlawful assemblage near place of", the term (for purposes of the Act) is "any controversy between an employer and two (2) or more of his employees concerning the terms or conditions of employment or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment."

Under V.A.C.S., Title 83, "Labor", Ch. 2, "Labor Organizations", Art. 5154f, "Secondary strikes, picketing and boycotts prohibited", a "labor dispute" (for purposes of the Act) is "limited to and means any controversy between an employer and the majority of his employees concerning wages, hours or conditions of employment; provided that if any of the employees are members of a labor union, a controversy between such employer and a majority of the employees belonging to such union, concerning wages, hours or conditions of employment, shall be deemed, as to the employee members only of such union, a labor dispute within the meaning of this Act." In connection with the term "labor dispute"

as so defined it is important to see International Union of Operating Engineers Local No. 564 v. Cox, supra.

In the several places of 29 U.S.C.A., "Labor", where "labor dispute" is defined, it is stated that the term "includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee."

We believe that the most material question for decision on the appeal is: "Do the circumstances occasioning the dispute of the parties exhibit the existence of a labor dispute?"

The circumstances giving rise to the controversy between the parties were as follows: In late 1960 Mr. Pippin went into the motion picture business. He leased a theatre which had been closed and proposed to the representative of the Motion Pictures Machine Operators local union that there be a "ninety day try-out period", in which he would test out his business operations to determine the feasibility of operating the theatre; that no usual union contract be entered into during that time; but for purposes of the test one union operator would be employed to operate the projection machine 50% of the time, with Pippin to operate it 50% of the time.

Agreement was made by the parties on the proposed basis, and Pippin apparently had a measure of success in his enterprise. The number of "showings" per week increased with a proportionate increase of the work and earnings of the union operator. Another theatre was leased by Pippin and an additional union operator employed on the same percentage basis. Pippin was then operating two theatres. There was some fluctuation in the number of "showings".

No controversy arose over the percentage question and no contract of the usual char-

acter was entered into. The delay thereof seems to have been occasioned by Pippin's plea for more time in which to estimate his degree of success. This continued until the fall of 1961.

In October of 1961, Pippin asked for a conference with the union representative of the operators. Thereat he proposed a reduction in the number of "showings" or "shifts" at each of the theatres where the union operators would be running the projection machines. His proposal was that he and other members of his family would operate the machines the greater part of the time with considerably less than 50% of the time allotted the union employee operators. The union and the employees refused. They made a counter offer which Pippin refused, stating that if the union and the employees would not work in accordance with his proposed plan he would institute operations wholly without the aid of employees, i. e., with the work being done by himself and members of his family. An impasse was reached. The parties could not agree. Pippin then discharged the two employees who were members of the union and instituted operations without employees. Within a few days the union caused the two theatres to be picketed. They carried signs reading. "This Theatre is Unfair— Moving Picture Machine Operators Local No. 330—AFL-CIO—LOCKED OUT— Please Do Not Patronize".

Pippin employed counsel. Suit was filed. A temporary restraining order was issued, ultimately ripening into a permanent injunction following a hearing on the merits.

We have concluded that no distinction is to be made between a picketing former employee who was discharged because he went on strike—and a picketing former employee who was discharged because he refused to agree to a reduction in the number of hours worked and corresponding reduction in wages to be received. In either case a labor dispute would exist as a matter of law,—absent demonstration of any additional circumstance which would alter its character,— affording reasonable grounds for picketing. International Union of Operating Engineers Local No. 564 v. Cox, supra. Here was not a case where there was a union contract terminating at a time certain, after which it might be arguable that the employer would be entitled to conduct his business without employees in the same manner as though he had never been an employer. Here was required an affirmative act to discontinue services on the one hand and employment on the other and an occasion therefor existent in the dispute about hours to be worked as a condition of the continuation of the employment. The discharged employees, or the union in their behalf, instituted picketing action without delay.

Additionally arisen is the question of whether the fact that the employer, or former employer, began to conduct his business without the aid of employees and solely through members of his family, etc., would effect a change inhibiting the character of the dispute as a "labor dispute".

We do not believe that institution of business operations without employees would effect any change. Such was the only additional circumstance apparent in the instant case. The discharged persons were employees at time of their discharge. For purposes of the questions under consideration their "employee" status persisted. International Union of Operating Engineers Local No. 564 v. Cox, supra. It would therefore be immaterial whether the employer (whose status as such would likewise persist) hired employees in the place and stead of those discharged or not. The character of the dispute originated and continued to be a "labor dispute" as a matter of law, giving rise to the complainants' undoubted legal right to picket in publication of the existent controversy. That being the case the trial court erred in the entry of permanent injunction prohibiting the peaceful picketing.

Judgment is reversed and rendered.